Commonwealth ex rel. Alexander, Appellant, *v.*
Rundle.

Submitted December 14, 1964; resubmitted September 15, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*John Alexander,* appellant, in propria persona.

*Joseph M. Smith,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY MONTGOMERY, J., October 7, 1965:

Following the filing of a per curiam order remanding this case to the lower court with instructions to conduct a hearing on relator's petition for a writ of habeas corpus, we granted the District Attorney's petition for reconsideration and permitted the parties to file additional briefs. The District Attorney exercised this right but the relator did not.

Relator is presently serving a sentence of not less than eight years nor more than twenty years in the State Correctional Institution at Philadelphia, imposed in 1955, for various crimes including aggravated robbery committed by him while on parole from the sentence imposed in 1938 about which he complains. Since the imposition of the 1955 sentence relator has been reparoled from the 1938 sentence. The date of his reparole is March 29, 1962, and it is from that date (less 27 days) that his 1955 sentence is effective.

The lower court dismissed relator's petition for the sole reason that he was being held on the 1955 sentence, which was admitted to be legal, and not on the 1938 sentence which he was attacking. President Judge ERVIN dissented from our per curiam order aforementioned for this reason.

The requirement of restraint under the sentence being attacked is no longer a valid reason for denying a writ of habeas corpus by which a defendant seeks to attack fundamental defects in the administration of criminal justice. *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A. 2d 613, filed September 29, 1965.

The previous order of this Court filed June 17, 1965 is affirmed.

SUPPLEMENTARY OPINION BY MONTGOMERY, J., November 10, 1965:

As a supplement to our opinion filed October 7, 1965, in which we held *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A. 2d 613 (1965),[1] as governing the present case, we deem it advisable to discuss our reasons.

The factual situations in the two cases are not identical. In *Stevens* the relator was serving a sentence which he was not attacking. His attack was aimed at a later sentence which had not begun to run. In such cases the rule existing before *Stevens* is stated therein

---

[1] This decision appears to us to be contrary to the law in the federal courts, *United States ex rel. Gaito v. Rundle*, 213 F. Supp. 508 (D.C.E.D. Pa. 1963), cert. denied, 375 U.S. 859, 84 S. Ct. 125, 11 L. Ed. 2d 86; *McNally v. Hill*, 293 U.S. 131, 55 S. Ct. 24, 79 L. Ed. 238 (1934), and to have changed the law of this Commonwealth as followed in *Commonwealth ex rel. Camara v. Myers*, 201 Pa. Superior Ct. 496, 193 A. 2d 642 (1963); *Commonwealth ex rel. Larkins v. Keenan*, 199 Pa. Superior Ct. 572, 186 A. 2d 852 (1962); *Commonwealth ex rel. Sloan v. Ashe*, 133 Pa. Superior Ct. 32, 1 A. 2d 788 (1938).

as follows, "Under such circumstances the rule has been that since the writ of habeas corpus is said to test only the legality of present restraint, the petition must be dismissed as premature because the propriety of the present confinement is unquestioned."

After a learned discourse on the history of the Great Writ with attention given to the manner in which the rigidity of the rule previously set forth has been eased, particularly in cases where improper or excessive sentences are corrected, the Supreme Court states:

"Reason accords with necessity and practicality in urging that we make the conditions under which the writ will issue conform with its current scope in cases of the instant sort. The history of the writ, its traditional use, and its recent development all indicate the writ's flexibility as a procedural vehicle for collaterally reaching fundamental defects in the administration of criminal justice. A refusal to permit the employment of the writ in the present circumstances would result in placing central emphasis on the history of the writ rather than upon its suitable employment in maintaining the balance 'nice, clear and true between the State and the accused.'

"Confident of our power to mold the Great Writ to the exigencies of the times, and mindful of present necessities, we conclude that the prematurity concept should be modified in circumstances such as those present here and that the writ of habeas corpus may be sought in postconviction attacks on the validity of a final judgment of conviction even though the petitioner has not yet begun to serve the sentence imposed."

In the present case Alexander is attacking the first sentence on which he is on "constructive" parole,[2] while

---

[2] "Constructive" parole is a term not used in the statute but is used by administration authorities and has been recognized by the courts. Its general use appears to be in cases where a prisoner is paroled from one offense so that he may begin to serve another.

serving the second or later sentence. If his second sentence had not been to a correctional institution under the supervision of the Department of Justice as his first had been the situation would have been similar to *Stevens* for the reason that, under those circumstances, he would have been compelled to serve the second sentence before doing his back time on the first. Section 21.1 of the Act of August 6, 1941, P. L. 861, as amended, 61 P.S. §331.21a. Furthermore, had relator not been reparoled he would not have commenced serving his second sentence and the foregoing rule would not have been applicable since he would have been in custody under the sentence he is attacking. However, he is again on parole from that sentence and the effect of that parole must be considered.

The question which relator seeks to raise is certainly not moot, because a prisoner, though on parole, is nevertheless still serving his sentence. The maximum sentence is the only portion of the sentence which has legal validity. *Commonwealth ex rel. Carmelo v. Smith*, 347 Pa. 495, 32 A. 2d 913 (1943), citing *Commonwealth v. Kalck*, 239 Pa. 533, 87 A. 61 (1913). While parole is a provisional release and an ameliora-

---

consecutive sentence. However, this usually occurs where the sentences are consolidated under the Act of June 25, 1937, P. L. 2093, §1, 19 P.S. §897. See *Commonwealth ex rel. Campbell v. Ashe* and *Commonwealth ex rel. Shupe v. Ashe*, 141 Pa. Superior Ct. 408, 15 A. 2d 409 (1940). We said in *Commonwealth ex rel. Salerno v. Banmiller*, 189 Pa. Superior Ct. 156, 161, 149 A. 2d 501, 504 (1959), a constructive parole is not intended to be a release from custody on the sentence to which it applies and that: "Here the prisoner was paroled, not to be released from prison, but to begin serving another term. If he were not required to serve any time on that term, the board would be justified, if not required, to review the parole and to keep him in prison at least until he had a satisfactory parole plan such as the board requires of other prisoners prior to their release on parole."

tion of punishment, it may be said to be, in legal effect, an imprisonment. It is a means of keeping a watchful eye on the convict outside the prison walls. *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 28 A. 2d 897 (1942); *Commonwealth ex rel. Forsythe v. Myers*, 200 Pa. Superior Ct. 636, 189 A. 2d 920 (1963); *Commonwealth ex rel. Lerner v. Smith*, 151 Pa. Superior Ct. 265, 30 A. 2d 347 (1943).

Prior to Section 21.1 of the Act of August 6, 1941, 61 P.S. §331.21a, a parolee who violated his parole by committing another crime during the period of his parole was not eligible for a reparole. This section of the Act of 1941 gives the Parole Board the right to reparole persons who have been recommitted after having been convicted of crimes while on parole. However, we note that the grant of a reparole in the present case would seem to create a situation where the parolee may be considered as serving two sentences concurrently.[3] This is in violation of the well-established rule, and the provisions of the statute, that a convicted parole violator may not serve his current sentence and his back time on a prior sentence concurrently. *Commonwealth ex rel. Haun v. Cavell*, 190 Pa. Superior Ct. 346, 154 A. 2d 257 (1959). This raises the question whether the second sentence may commence before the expiration of parole on the first. However, we deem it unnecessary to decide that question at this time.

If relator's second sentence is not properly in effect, he is still in custody under his first sentence although on "constructive" parole, and the pre-*Stevens* rule set forth in the early part of this opinion is not a reason for denying him a writ of habeas corpus.

---

[3] In *Commonwealth ex rel. Carter v. Myers*, 205 Pa. Superior Ct. 478, 211 A. 2d 46 (1965), we refused to affirm the lower court's action in denying a writ of habeas corpus solely on the grounds that there was a concurrent sentence not under attack but did so primarily for other reasons.

If the second sentence is in effect relator is serving concurrent sentences,[4] one on constructive parole and the other by actual confinement. Although a parolee at actual liberty may not deserve the expenditure of judicial time and effort to determine his grievance concerning his sentence as indicated by the Supreme Court in *Stevens*, the situation is different when actual physical restraint continues. In the federal courts the restraint imposed by the parole authorities is sufficient to justify the allowance of a writ of habeas corpus. *Jones v. Cunningham*, 371 U.S. 236, 83 S. Ct. 373, 9 L. Ed. 285 (1962). We have found no case in Pennsylvania which directly holds that a parolee may not resort to habeas corpus to attack the sentence from which he is on parole, although generally the courts of Pennsylvania have recognized only actual physical restraint in such cases.

In *Stevens* the Supreme Court indicated that the application of the prematurity concept would compound the situation, were a hearing or retrial required, and in its Footnote 18 said, "The prematurity concept actually serves no meaningful purpose in post-conviction habeas corpus proceedings such as this. This is especially apparent in light of the fact that the relief, if warranted, is precisely the same whether or not petitioner is presently serving the sentence he attacks. In both instances we would merely order a retrial and not immediate release."

This same statement may be applied in the present case and should be followed by the same ruling. Alexander would not be released, whether or not his claim should be sustained. He would be granted a new trial. As in *Stevens*, he should not be denied the right to assert and prove the want of due process in his original

---

[4] This question was discussed but not completely answered in *Commonwealth ex rel. Salerno v. Banmiller*, supra, and *Commonwealth ex rel. Larkins v. Keenan*, supra.

trial until twenty or more years hence with all the additional burdens which accompany passage of those additional years.

Although we would and do delete from our original opinion the general statement that, "The requirement of restraint under the sentence being attacked is no longer a valid reason for denying a writ of habeas corpus by which a defendant seeks to attack fundamental defects in the administration of criminal justice," we will affirm our order on the basis that *Commonwealth ex rel. Stevens v. Myers,* supra, governs the disposition of the present case. The reasons given in support of *Stevens* in our opinion are applicable to Alexander. If he is presently serving the back time on his original sentence he has the right to question that sentence; on the other hand, if he is a constructive parolee from that sentence, we think, following the reasoning of *Stevens,* that he is still under sufficient restraint by reason of same to justify a hearing on his petition for a writ of habeas corpus by which he seeks to prove it to be in violation of his constitutional rights.

---

CONCURRING OPINION BY WRIGHT, J.:

When this appeal was first submitted on December 14, 1964, I took the position that the case should be remanded for hearing. On June 17, 1965, there was a per curiam order to that effect. On October 7, 1965, an opinion was filed affirming this order. The purpose of this concurring opinion is to express the view that we should not initiate a policy of filing supplementary opinions. Nor do I agree with all that is being said. I concur only in the result.